# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                CRIMINAL ACTION NO. 2:10-cr-00182

BILLY E. LUNSFORD,

        Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Billy E. Lunsford's Motion to Dismiss [Docket 20]. For the reasons set forth below, the motion is **DENIED**.[1]

### *I. BACKGROUND*

On October 22, 2010, the grand jury returned a one-count indictment against Defendant, Billy E. Lunsford, charging him with possessing a firearm after he had been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). (Docket 2 at 1-2.) The indictment alleges that Defendant knowingly possessed a .22 caliber Firestorm pistol in and affecting interstate commerce on or about September 7, 2010.

To be charged with violating § 922(g)(1), Defendant must have a predicate felony conviction. The government relies upon Defendant's March 30, 2006,[2] felony conviction in the

---

[1] As noted at the pretrial motions hearing, Defendant's unopposed Motion to Strike Surplasage [Docket 22] is **GRANTED**.

[2] Although this is the date referenced in the indictment, the Court notes that there is some confusion on the exact date of this conviction. The Circuit Court of Logan County reports that Defendant pled

(continued...)

Circuit Court of Logan County, West Virginia, of delivery of a Schedule II controlled substance, hydrocodone, in violation of W.Va.Code. § 60A-4-401(a).[3]

The instant indictment originates from a "knock and talk" conducted by police officers at the home of one Susan Thomas, located in Logan County, West Virginia. On September 7, 2010, members of the U.S. Route 119 Drug Task Force (Task Force) conducted a controlled buy at Ms. Thomas' residence. Defendant was not involved in that sale. Later that day, officers returned to the home and, with the permission of Ms. Thomas, proceeded to search the premises. All present occupants of the home, which included Defendant, were then directed to stand on the front porch and empty their pockets. At that time, Defendant advised an officer working with the Task Force that he had a gun in his pocket, which he then placed on the railing.

Defendant was later charged with violating 18 U.S.C. § 922(g)(1), which provides, in pertinent part, "It shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting interstate commerce . . . any firearm or ammunition." In the current motion, Defendant contends that 18 U.S.C. § 922(g)(1), as applied to him, violates his Second Amendment right to self-defense.

## II. APPLICABLE LAW

Pursuant to Fed. R. Crim. P. 12(b)(3)(B), the district court may, at any time during the pendency of a case, hear a defendant's claim that an indictment fails to state an offense or is

---

[2](...continued)
guilty to this offense on September 1, 2005, and was sentenced on February 6, 2006.

[3] The Court notes that Defendant has two other felony convictions, for grand theft of a motor vehicle and uttering. Defendant contends that these convictions did not involve violence or the use of a firearm. For the purposes of analyzing this motion, the Court restricts its discussion to the predicate felony contained in the indictment.

otherwise defective. *See In re Civil Rights Cases*, 109 U.S. 3, 8-9 (1883). An indictment is defective if it charges a violation of an unconstitutional statute. *See United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). Upon a finding that an indictment is defective, the district court must dismiss the indictment.

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. The Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008), recently held that the Second Amendment secures an individual right to keep and bear arms. *Id.* at 595. Interpreting the text in light of how it would have been viewed by "ordinary citizens in the founding generation," *id.* at 577, the Court held that the "core" of the Second Amendment's protections was "the right of law-abiding, responsible citizens to use arms in the defense of hearth and home." *Id.* at 634.

The Second Amendment right as identified in *Heller* is "limited in scope and subject to some regulation." *United States v. Chester*, --- F.3d ----, No. 09-4084, 2010 WL 5396069, at *2 (4th Cir. Dec. 30, 2010). Notably, the *Heller* Court identified a non-exhaustive, illustrative list of "longstanding prohibitions on the possession of firearms" as "presumptively lawful regulatory measures." *Heller*, 544 U.S. at 626-27 & n.26. Among the longstanding prohibitions that the Court found presumptively lawful were those on the possession of firearms by felons. *Id.* at 626. As such, § 922(g)(1) falls squarely within the list of presumptively lawful measures announced in *Heller*.

Although not determining precisely where these "presumptively lawful regulatory measures" fit, the Fourth Circuit recently outlined a two-part approach to post-*Heller* Second Amendment claims. *Chester*, 2010 WL 5396069, at *6. First, the court must conduct a historical inquiry into

the challenged law, asking whether it "'imposes a burden on conduct falling within the scope of the Second Amendment's guarantee' . . . at the time of ratification."*Id.* (quoting *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)). If it does not, the law is valid and the court's inquiry ends. *Id*. Second, if the challenged law does burden "conduct within the Second Amendment as historically understood," then the court should apply "an appropriate form of means-ends scrutiny." *Id*. Unless the first part of the test establishes that the conduct at issue is outside of the scope of the Second Amendment, "the Government bears the burden of justifying the constitutional validity of the law." *Id.*

Noting that *Heller* left open the appropriate level of scrutiny for laws burdening protected Second Amendment conduct, the Fourth Circuit in *Chester* advocated importing concepts from First Amendment jurisprudence. *See id.* at * 8 ("[W]e agree with those who advocate looking to the First Amendment as a guide in developing a standard of review for the Second Amendment."). Noting that the level of scrutiny applied in First Amendment cases varies dependent on the nature of both the regulated conduct and the burden on protected activity imposed by the regulation itself, *Chester* embraced language from a vacated Seventh Circuit panel opinion:

> The Second Amendment is no more susceptible to a one-size-fits-all standard of review than any other constitutional right. Gun-control regulations impose varying degrees of burden on Second Amendment rights, and individual assertions of the right will come in many forms. A severe burden on the core Second Amendment right of armed self-defense should require strong justification. But less severe burdens on the right, laws that merely regulate rather than restrict, and laws that do not implicate the central self-defense concern of the Second Amendment, may be more easily justified.

*Id.* (quoting *United States v. Skoien*, 587 F.3d 803 (7th Cir. 2009), *vacated,* 614 F.3d 638 (7th Cir. 2010) (en banc)). The Fourth Circuit went on to hold that a claim falling outside of the "core right

identified in *Heller*," defined as "the right of every *law-abiding*, *responsible* citizen to possess and carry a weapon for self defense," merited intermediate scrutiny. *Id.* (emphasis in original).

### *III. DISCUSSION*

This Court is acutely aware of the Supreme Court's twice-repeated admonition to lower courts that its decision in *Heller* should not be interpreted to "cast doubt on longstanding prohibitions" such as "the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 544 U.S. 626-27; *McDonald v. City of Chicago*, --- U.S. ----, 130 S.Ct. 3020, 3047 (2010). These "presumptively lawful regulatory measures," including 18 U.S.C. § 922(g)(1), were *specifically identified* by the Supreme Court as surviving the sea change in the law brought by *Heller* and *McDonald*. *Heller*, 544 U.S. at 626-27 & n.26; *McDonald*, 130 S.Ct. at 3047. Courts around the country, including the Fourth Circuit, have almost uniformly used the Court's "presumptively lawful" language, standing alone, to dismiss the post-*Heller* wave of facial challenges to the constitutionality of § 922(g)(1). *See, e.g., United States v. Brunson*, No. 07-4962, 292 F. App'x 259, 261 (4th Cir. Sept. 11, 2008) (per curiam) (dismissing a Second Amendment challenge to § 922(g)(1) as "meritless" in light of the language in *Heller*); *see also United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) (per curiam); *United States v. Vongxay*, 594 F.3d 1111, 1114 (9th Cir. 2010); *United States v. Khami*, 362 F. App'x 501, 507-08 (6th Cir. 2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009); *United States v. Stuckey*, 317 F.App'x 48, 50 (2d Cir. 2009) (per curiam); *United States v. Anderson*, 559 F.3d 348, 552 & n.6 (5th Cir. 2009); *United States v. Irish*, 285 F. App'x 326, 327 (8th Cir. 2008) (per curiam).

*A. 18 U.S.C. § 922(g)(1) is constitutional on its face.*

The Fourth Circuit's recent decision in *United States v. Chester*, although it dealt with a challenge to the constitutionality of 18 U.S.C. § 922(g)(9), a category of § 922(g) not specifically identified as one of *Heller*'s "presumptively lawful regulatory measures," nevertheless discussed at some length felon dispossession and the debatable origin and import of the Supreme Court's "presumptively lawful" and "longstanding prohibition" language. *Chester*, 2010 WL 5396069, at \*5. As *Chester* noted, *Heller*'s illustrative list of constitutionally permissible "longstanding prohibitions" is subject to two possible interpretations:

> It is unclear to us whether *Heller* was suggesting that "longstanding prohibitions" such as these were historically understood to be valid limitations on the right to bear arms or did not violate the Second Amendment for some other reason. . . . But even if the listed regulations were not historical limitations on the scope of the Second Amendment, the Court could still have viewed the regulatory measures as "presumptively lawful" if it believed they were valid on their face under any level of means-ends scrutiny applied.

*Id.* (footnote omitted). Although the Fourth Circuit declined to resolve this debate, it is clear that, when applied to the newly-announced two-step framework for analyzing Second Amendment challenges, either of these interpretive strands passes constitutional muster.

First, the "presumptively lawful regulatory measures" could be considered "historical limitations" on the right to bear arms, thus regulating conduct entirely outside of the Second Amendment's protections. *Id.* As these regulations would accordingly not "burden . . . conduct falling within the scope of the Second Amendment's guarantee . . . at the time of ratification," they would be automatically valid under the first prong of *Chester*'s Second Amendment framework. *Id.* at \*6. Second, even if the "presumptively lawful regulatory measures" are considered to fail the historical test and burden protected conduct, they are still "valid on their face under any level of means-ends scrutiny applied." *Id.* at \*5. The regulations would thus presumptively satisfy the

application of the "appropriate form of means-ends scrutiny" that makes up the second part of the *Chester*'s Second Amendment framework. *Id.* at *6. Under either of these two mutually exclusive possibilities, § 922(g)(1) is thus constitutionally valid on its face. *See also Brunson*, 292 F. App'x at 261.

While this Court views its inquiry into the constitutionality of § 922(g)(1) as largely concluded by this language, *Chester* notes that "the phrase '*presumptively* lawful regulatory measures' suggests the possibility that one or more of these 'longstanding' regulations 'could be unconstitutional in the face of an as-applied challenge.'" *Chester*, 2010 WL 5396069, at *5 (emphasis in original) (quoting *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) (denying as-applied challenge to § 922(g)(1)). *Chester* does not further identify the "one or more" potentially vulnerable regulations to which this passage refers, nor does it expand any further on the implications of this phrasing. Moreover, as it does not relate directly to the issue at hand in *Chester*, this passage is likely dicta. The Court is reticent to read this passage as allowing for as-applied challenges, thereby inviting a raft of litigation concerning as-applied challenges to § 922(g)(1), particularly in light of the fact that, as Defendant candidly admits, no court has ever held that § 922(g)(1) is unconstitutional based upon *Heller* or *McDonald*. *See Williams*, 616 F.3d at 693 ("[E]very court to address the constitutionality of § 922(g)(1) in light of *Heller* has upheld that statute."). This includes courts considering as-applied challenges. *See, e.g., United States v. Ligon*, No. 3:04-cr-00185-HDM, 2010 WL 4237970 (D. Nev. Oct. 20, 2010) (collecting cases).

This Court is not at all convinced that the language of *Heller* has left open the possibility of as-applied challenges to § 922(g)(1), despite the *Chester* dicta. Nonetheless, in the interests of completeness, the Court will briefly consider Defendant's arguments.

B.      *18 U.S.C. § 922(g)(1) is constitutional as applied to Defendant.*

Defendant attempts to distinguish his challenge to § 922(g)(1) on two bases. First, Defendant argues that his debilitating medical conditions and his need to travel across state lines with OxyContin pills necessitate that he carry a firearm to protect himself. Consequently, during the incident that gave rise to the instant indictment, Defendant alleges that he was preparing to travel to an out-of-state clinic to obtain his prescriptions and was carrying a firearm solely for self-defense.[4] Second, Defendant argues that his underlying felony conviction, delivery of hydrocodone in violation of West Virginia state law, was a non-violent drug offense in which a firearm was not involved. As such, Defendant argues that § 922(g)(1), as applied to him, "violates the fundamental individual right to self defense protected by the Second Amendment." (Docket 20 at 2.)

        *1.      If § 922(g)(1) is a "historical limitation" on the right of felons to possess firearms, Defendant's as-applied challenge fails.*

Under the first step of *Chester*, the Court must determine whether § 922(g)(1) "'imposes a burden on conduct falling within the scope of the Second Amendment's guarantee' . . . at the time of ratification." *Chester*, 2010 WL 5396069, at *5 (quoting *Marzzarella*, 614 F.3d at 89). As a threshold matter, it is undisputed that § 922(g)(1) operates as a categorical ban on all firearm possession for certain persons. *Id.* at *6 ("Section 922(g)(9), like the felon-dispossession provision set forth in § 922(g)(1), permanently disarms an entire category of persons."). For such categorical bans, the threshold inquiry is "whether a person, *rather than the person's conduct*, is unprotected

---

[4] This is Defendant's version of the facts. His prior conviction for delivery of hydrocodone, his presence at a residence where drug activity was suspected, and his admitted out of state travel to obtain (albeit prescribed) OxyContin raises an inference of less innocent circumstances.

by the Second Amendment." *Id.* (emphasis added) (citing *Skoien*, 614 F.3d at 649 (Sykes, J., dissenting)).

Not surprisingly, the Government and Defendant disagree as to whether felons, particularly drug felons, were protected by the Second Amendment at the time of its ratification. The Fourth Circuit's uncertainty on this issue is well-documented. *Id.* ("[I]t appears to us that the historical data is not conclusive on the question of whether the founding era understanding was that the Second Amendment did not apply to felons.").[5] As such, the Court will not purport to resolve this debate. However, it can be briefly noted that, if § 922(g)(1) is a historical limitation on the right to bear arms, it infringes no Second Amendment interests and would be valid as applied to Defendant, his arguments notwithstanding. *Id.* at *5.

> 2. *If § 922(g)(1) is not a "historical limitation" on the right of felons to possess firearms, Defendant's as-applied challenge fails.*

If Defendant's Second Amendment rights are intact by virtue of the "inconclusive" historical evidence on felon dispossession, under the second step of the *Chester* framework, the Court must apply some form of heightened constitutional scrutiny to his as-applied claim. *Id.* (noting that "the [Supreme] Court would apply some form of heightened constitutional scrutiny if historical evaluation did not end the matter."). Based on the Fourth Circuit's discussion in *Chester*, the Court finds intermediate scrutiny to be appropriate here.

Although Defendant argues for strict scrutiny given that he allegedly possessed the weapon in self-defense, this argument has been foreclosed by *Chester*. In *Chester*, the defendant made a similar push for strict scrutiny based on "his right to possess a firearm in the home for the purpose

---

[5] After *Chester,* it is arguably the law in this circuit that the historical analysis of § 922(g)(1) is inconclusive and therefore unavailable.

of self defense." *Id.* at * 8. Dismissing this argument, the Fourth Circuit held that a domestic violence misdemeanant was outside of "the core right identified in *Heller*," identified as "the right of a *law abiding, responsible* citizen to possess and carry a weapon in self defense," by virtue of his domestic violence conviction. *Id.* (emphasis in original). The Fourth Circuit concluded that intermediate scrutiny was the appropriate standard for the defendant and "similarly situated persons." *Id*. Similarly, Defendant's focus on his arguably heightened need for self-defense is irrelevant; Defendant is one or more steps removed from the "core right identified in *Heller*" by virtue of his felony conviction. *Id.* Therefore, intermediate scrutiny is appropriate. *Cf. Williams*, 616 F.3d at 692 (using intermediate scrutiny to analyze an as-applied challenge to § 922(g)(1)); *United States v. Oppedisano*, No. 09-CR-0305, 2010 WL 4961663 (E.D.N.Y. November 30, 2010) (same).

To pass constitutional muster under intermediate scrutiny, the Government must demonstrate "that there is a 'reasonable fit' between the challenged regulation and a 'substantial' government objective." *Chester*, 2010 WL 5396069, at * 8 (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)). There can be little doubt that protecting the safety and lives of citizens and preventing crime is a compelling governmental interest. *See United States v. Solerno*, 481 U.S. 739, 750, 754-55 (1987). Section 922(g)(1) was enacted as part of the Gun Control Act of 1968, which sought to "keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" *United States v. Small*, 544 U.S. 385, 393 (2005) (citations omitted). This goal was accomplished by proscribing gun ownership and possession for certain classes of "presumptively dangerous individuals," among them convicted felons. *United States v. Kahoe*, 134 F.3d 1230, 1234 (4th Cir. 1998). As the Government correctly

10

notes, there is a "settled connection between drugs and firearms," *United States v. Manigan*, 592 F.3d 621, 629 (4th Cir. 2010), and firearms are considered "tools of the trade" in the illegal drug business. *United States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999). Most importantly, it is well-established in the Fourth Circuit that "drugs and guns form a lethal combination that can lead to violence." *Manigan*, 592 F.3d at 629 (quoting *United States v. Harris*, 128 F.3d 850, 852 (4th Cir.1997)). Keeping firearms out of the hands of convicted drug felons such as Defendant accomplishes the government's objective of both deterring and reducing drug-related violence.

Notably, the Supreme Court in *Heller* did not make reference to categories or sub-categories of felons when carving out the "presumptively lawful regulatory measures." *Heller*, 544 U.S. at 626 -27 & n.26. It is generally accepted that offending society by committing a crime leads legitimately to the loss of certain rights, such as the right to vote or serve on a jury. *See, e.g.*, 18 U.S.C. § 921(a)(33)(B)(ii) (referring to restoration of certain civil rights and inferring that such rights are stripped by virtue of a conviction under Title 18); *see also Beecham v. United States*, 511 U.S. 368, 373 n.* (1994) (listing the right to vote and the right to serve on a jury among the federal civil rights lost upon felony conviction). Firearms prohibition is also such a forfeited right. *See, e.g.*, W. Va. Code § 61-7-7. This loss of rights serves both as a form of punishment and as an incentive to deter future crimes. Other than incarceration, there may be no more effective deterrent to crime than the threat of the loss of firearms rights.

Defendant forfeited his firearms rights when he committed a felony drug offense in violation of state law. *Even if* the presumptively lawful § 922(g)(1) could be vulnerable to an as-applied challenge by a non-violent felon, *see Williams*, 616 F.3d at 693 ("§ 922(g)(1) may be subject to an overbreadth challenge at some point because its disqualification of all felons, including those who

11

are non-violent"), given the "settled connection between drugs and firearms," which are a "lethal combination that can lead to violence," this Defendant does not present a difficult test case for the Court. *Manigan*, 592 F.3d at 629. Thus, § 922(g)(1) is constitutionally applied to Defendant.[6]

### *III. CONCLUSION*

For the reasons set forth above, Defendant's Motion to Dismiss [Docket 20] is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:   January 18, 2011

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[6] During argument, Defendant's counsel asserted that the "presumptively lawful" language in *Heller* resulted in a presumption of constitutionality that could somehow be rebutted. Defendant offered no authority for such a constitutional rebuttable presumption or for any standard by which a court might analyze such an argument. Therefore, the Court chooses not to attempt to analyze this issue by this method.

12